JAMES A. KLINE, administrator of Jane V. Sheppard,

*v.*

JOHN H. GRANNIS and CALVIN CORLE et al.

[Filed March 7th, 1901.]

To prove that a judgment creditor knew of the existence of a prior mortgage, it was shown that he had held the note representing the judgment debt for several years; that, when the debtor purchased the property covered by the mortgage, it was generally understood that he bought it on credit, and the judgment creditor had reason to believe that the debtor had no money to pay for the property, and was making inquiries respecting a mortgage, and expressing wonder that there was none on record, and he stated to one witness that he presumed that a mortgage was given, from what he knew of the debtor's financial condition, one witness testified that he mentioned to the creditor the fact of a mortgage having been given, but the creditor testified that he had no recollection of such conversation.—*Held*, to show knowledge putting the creditor on inquiry as to the existence of the mortgage.

This bill is filed to foreclose a mortgage given to Jane V. Sheppard by Louis H. Schenck on March 8th, 1892.

The question in the case is in respect to the relative priority of this mortgage and a judgment recovered against Louis H. Schenck on July 20th, 1892.

*Mr. Richard S. Kuhl,* for the complainant.

*Mr. Alvah A. Clark,* for the defendant Corle, judgment creditor.

REED, V. C.

The mortgage was a purchase-money mortgage, given to secure $2,500, as consideration for a sale of real estate made by Jane V. Sheppard to Louis H. Schenck cotemporaneously with the execution of the mortgage on March 8th, 1892.

The mortgage was not recorded until August 26th, 1892. At the time the deed and mortgage were executed, Calvin Corle held a note made by Senator Schenck, of which note Louis H. Schenck was a surety. This note was made by the Messrs. Schenck on April 1st, 1885, payable one year after date to the order of Elijah C. Hough. Mr. Hough sold the note to Mr. Corle some time before July 1st, 1886. After Louis H. Schenck got title to the Sheppard property, Mr. Corle, finding that, so far as the record showed, it was unencumbered, began a suit upon the note, and obtained a judgment against the Messrs. Schenck on July 20th, 1892. His judgment is entitled to priority over the then unrecorded mortgage, unless, at the time it was entered, he knew of the existence of the unregistered mortgage.

On the part of the mortgagor it is insisted that Mr. Corle had knowledge of its existence. The testimony shows that when Louis H. Schenck bought this property those who knew his circumstances assumed that he had bought it on credit. Mr. Corle had held his note for several years. He did not imagine that Mr. Schenck had the cash to pay for the property. He talked the matter over with his friend, Mr. Cortelyou, and both wondered that there was no mortgage—what they meant was that it was strange that no mortgage had appeared at the clerk's office for registration. Mr. Corle was obviously expecting its appearance, for he made inquiries respecting it at every one of his quite frequent visits to the clerk's office. This mental condition of expectation is what Mr. Corle alluded to when talking with the witness Sheppard, to whom he said, according to Mr. Sheppard's testimony, "that he presumed that a mortgage was given from what he knew of Mr. Schenck's financial condition."

Apart from this general knowledge of Mr. Louis H. Schenck's circumstances possessed by Mr. Corle, there is in evidence a conversation alleged to have occurred between Mr. McIlhanney and Mr. Corle in the spring of 1892. Mr. McIlhanney says that in

that conversation with Mr. Corle he mentioned the fact that his mother-in-law, Mrs. Sheppard, had sold this property to Mr. Schenck, and had taken a mortgage for $2,500, and that Mr. Schenck was to put $1,000 in improvements on the property, which would make the mortgage a good one. Mr. Corle says he has no recollection of such a conversation or of speaking about the matter to anyone, except Mr. Cortelyou and the county clerk.

I believe Mr. Corle implicitly when he says he has no recollection of the conversation, and the question is one of probability as to the likelihood of its occurrence. Eight years have elapsed since the occurrence of the alleged conversation, and over five years had elapsed since it was discovered that the conversation was important. Nevertheless, I think that it is more probable that this talk occurred, and that Mr. Corle has forgotten it, than that Mr. McIlhanney is entirely mistaken as to its occurrence and as to the substance of the conversation. The transfer of the property was something of an event in the neighborhood, and was undoubtedly frequently discussed by Mr. Corle and others, and this conversation may have been one of many on the same subject between him and other parties. Although it has now faded from his memory, it then probably added to his wonder why such a mortgage had not been produced for registration. If he had intended to purchase the property for a new consideration, I do not think he would have thought of doing so without assuring himself of its existence. He could have so assured himself by inquiry of Mr. Schenck or Mrs. Sheppard. But the only question being one of expense in entering judgment, his concern was not so much whether a mortgage existed, as it was whether a judgment upon his note could be recovered before its registration. He was in a position where he did not wish to inquire, for fear of finding that for which he inquired. This condition of mind was equivalent to notice. *Wade Not.* §§ *9, 11; 1 Jones Mort.* § *545; Notes to Le Neve* v. *Le Neve, 2 White & T. Lead. Cas. (4th Am. ed.) 122.*